RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE __11__ / __10__ / __11__

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

UNITED STATES OF AMERICA                CRIMINAL ACTION
                                        1:09-cr-00196

VERSUS


                                        JUDGE DEE D. DRELL
JEROME WEATHINGTON                      MAGISTRATE JUDGE JAMES D. KIRK


<u>REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE</u>

Before the court is a motion to vacate, set aside or correct sentence filed pursuant to 28 U.S.C. § 2255 by petitioner Jerome Weathington ("Weathington"). Weathington is challenging his 2010 conviction by a jury in the Western District of Louisiana, Alexandria Division, on one count of assault resulting in serious bodily injury. Weathington was sentenced to sixty months imprisonment. See <u>U.S. v. Weathington</u>, 428 Fed.Appx. 366, 2011 wl 2342503 (5th Cir. 2011).

Weathington raises the following grounds for relief in his Section 2255 petition:

    1. Weathington had ineffective assistance of trial and appellate counsel.

    2. The government's video evidence was tampered with.

This motion is before the undersigned Magistrate Judge for initial review. See 28 U.S.C. § 2255 and Rule 4(b) of the Federal Rules Governing Section 2255 Proceedings For the United States

District Courts, which state in part, "If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified. Otherwise, the judge shall order the United States Attorney to file an answer or other pleading within the period of time fixed by the court or to take such other action as the judge deems appropriate."

## Rule 8(a) Resolution

This court is able to resolve the merits of this Section 2255 application without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the claims of the petitioner, and the State court records provide the required and adequate factual basis necessary to the resolution of the Section 2255 application. U.S. v. Green, 882 F.2d. 999, 1008 (5th Cir. 1989); Section 2255 Rule 8(a).

## Law and Analysis

### The Law of §2255 Actions

Relief under 28 U.S.C. §2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding. U.S. v. Vaughn,

2

955 F.2d 367, 368 (5th Cir. 1992). Also, U.S. v. Ressler, 54 F.3d 257 (5th Cir. 1995). A collateral challenge may not do service for an appeal. After conviction and exhaustion and waiver of any right to appeal, the federal courts are entitled to presume that the defendant stands fairly and finally convicted. U.S. v. Shaid, 937 F.2d 228, 231-32 (5th Cir. 1991), cert. den., 502 U.S. 1076, 112 S.Ct. 978, 117 L.Ed.2d 141 (1992). Even if a defendant raises a constitutional error, he may not raise an issue for the first time on collateral review without showing both cause for his procedural default and actual prejudice resulting from the error. U.S. v. Mimms, 43 F.3d 217, 219 (5th Cir. 1995), and cases cited therein.

Cause is demonstrated by showing objective external factors which prevented the petitioner from having raised the instant claim previously, and actual prejudice resulting from the error. If the petitioner cannot show cause, the failure to raise the claim in an earlier proceeding may nonetheless be excused if the petitioner can show that a fundamental miscarriage of justice would result from a failure to entertain the claim, i.e. the petitioner must make a colorable showing of actual innocence. U.S. v. Flores, 981 F.2d 231, (5th Cir. 1994). Also, McCleskey v. Zant, 499 U.S. 467, 495, 111 S.Ct. 1454, 1471, 113 L.Ed.2d 517 (1991). Absent exceptional circumstances, establishment of ineffective assistance of counsel satisfies cause and prejudice. U.S. v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995).

Summary of Trial Testimony

In the case at bar, Weathington, Terry Liggins and Anthony Ater, all inmates at the U.S. Penitentiary in Pollock, Louisana in early 2009, were in a fight on January 2, 2009, in which Weathington and Ater were severely injured.  In the above-captioned case, Weathington was charged with and convicted of assaulting and seriously injuring Ater in that fight.  Weathington was not charged with assaulting Liggins.  It does not appear that either Liggins or Ater were charged.

At Weathington's trial, Joseph Valdez, the service officer specialist and officer in charge of the B-1 Unit on the date of the assault, testified there are typically up to 132 inmates and two unarmed guards on duty in B-1; Valdez testified that he did not see which of the three inmates (Weathington, Liggins, and Ater) initiated the assault, but he saw that all three inmates had weapons and were using them (Doc. 48, pp. 43-44/140, 47-48/140). Valdez further testified that, after he called in the fight, he yelled at the inmates to stop and put their weapons down (Doc. 48, p. 49/140).  Valdez testified that none of the guards actually broke up the fight because there was not enough staff to do so (Doc. 48, p. 52/140).  Valdez testified that, after the fight, when Weathington stripped his clothes off, he saw Weathington was wearing armor made of food trays under his clothes (Doc. 48, Tr. pp. 52-53/140).

4

Regina Brown (formerly Lonidier), a correctional officer at USP-Pollock working in B-1 with Valdez on January 2, 2009, testified that Liggins did not reside in the B-1 unit, but was there that day working as an orderly/janitor (Doc. 48, Tr. pp. 70-72/140). Brown testified that she did not see who started the assault, but she told the inmates to stop fighting and then waited for more staff to arrive because the inmates were armed and she was not (Tr. pp. 73-74/140). Brown testified that Liggins' and Ater's shanks were make from pieces of bunk beds and Weathington had a sock stuffed with pieces of porcelain from a sink or toilet (Doc. 48, Tr. pp. 77-78/140).

Correctional Supervisor Bauserman testified that Weathington had a netted laundry bag, plastic food lids, and food trays under his clothes (Doc. 48, Tr. p. 85-87/140).

The treating physician, Dr. Philip Lindsay, testified that both Ater and Weathington each had numerous superficial wounds, one deep wound, and a collapsed lung (Doc. 48, Tr. pp. 60-61/140, 63/140).

Weathington testified at his trial that he was serving a sentence for armed robbery in 2007; that was his only prior felony conviction (Doc. 48, Tr. pp. 102/140). Weathington had been incarcerated in the federal penitentiary in Allenwood, Pennsylvania, where he was attacked and stabbed four times by members of a DC/Baltimore area gang (Doc. 48, Tr. pp. 103/140,

108/140).   Weathington was then transferred to the federal
penitentiary in Beaumont, Texas where, within three weeks, he was
jumped and beaten in his cell by two men who were friends of the
men who had stabbed him in Pennsylvania (Doc. 48, Tr. pp. 104/140,
108-109/140).   Weathington was then transferred to USP-Pollock in
March 2008 (Doc. 48, Tr. p. 105/140).   Weathington testified that
he popped the shower head and broke the toilet in his cell (because
he was denied recreation), which caused the cells below his to
flood and made several inmates angry at Weathington (Doc. 48, Tr.
pp. 105, 107-108/140).   Weathington testified that two inmates (one
from DC) told Weathington they were going to stab him because he
had flooded their cells; neither of those inmates was Liggins or
Ater (Doc. 48, Tr. pp. 107-108/140).   Weathington had already
requested protective custody due to fear of attack by DC inmates
and had been placed in the SHU for three months, then moved to B-1,
a SHU holdover unit (Doc. 48, Tr. pp. 106-107/140, 119-120/140).
Weathington testified that he did not tell the corrections officers
the two inmates had threatened him, but instead took lids from the
food trays to wear as armor and prepared the sock (with pieces of
the broken toilet in it) to protect himself (Doc. 48, Tr. pp. 110-
111/140, 127/140).

Weathington testified that, on the day of the assault by
Liggins and Ater, when he got to the floor of the rec area, Liggins
called him to the rec area steps so he and Ater could talk to him

6

(Doc. 48, Tr. p. 112/140); Weathington testified that both Liggins and Ater were from DC (Doc. 48, Tr. p. 112/140). Weathington testified that he walked over to Ater and began talking to him, but when he saw Ater begin to reach for his knife (Weathington had previously seen Ater put it in his pocket), Weathington swung his sock at Ater, and Ater stabbed Weathington in the face (Doc. 48, Tr. pp. 112-113/140). Weathington testified that, later in the fight, he grabbed a knife that Ater threw at him, cutting his hand in the process; Weathington testified that he did not have a knife when the fight started (Doc. 48, Tr. pp. 113-114/140, 117/140). Both Liggins and Ater stabbed at Weathington, but some of the blows struck his armor; Ater also bit Weathington's face (Doc. 48, Tr. pp. 113-114/140, 116-118/140).

Neither Liggins or Ater testified at Weathington's trial.

Ground 1 - Ineffective Assistance of Counsel

Weathington contends he had ineffective assistance of counsel at trial because his attorney failed to contact Weathington's witness to prove he acted in self-defense, interview Weathington's witness, or call Weathington's witness at trial, failed to present any physical evidence to prove self-defense, failed to file a motion alleging the video footage evidence had been tampered with, failed to raise prosecutorial misconduct/prejudice for indicting Weathington, failed to present facts to the jury as to Weathington's status at prison during the incident so the jury

would believe Weathington acted in self-defense, and told Weathington to wait until sentencing for an opportunity to speak after he had testified in his own behalf. Weathington contends he had ineffective assistance of appellate counsel because his appellate attorney failed to raise the issues of ineffective assistance of trial counsel, double jeopardy, tampered video evidence, prosecutorial misconduct, and retaliation.

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must show that his counsel's performance was both deficient (i.e., that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (i.e., that errors by counsel "actually had an adverse effect on the defense). The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. On the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding; rather, he must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

8

Anderson v. Collins, 18 F.3d 1208, 1215 (5th Cir. 1994), and cases cited therein. Also, U.S. v. Segler, 37 F.3d 1131, 1136 (5th Cir. 1994). In a habeas proceeding alleging ineffective assistance of counsel, the petitioner has the burden of proof. U.S. v. Chavez, 193 F.3d 375, 378 (5th Cir. 1999), citing Clark v. Collins, 19 F.3d 959, 964 (5th Cir. 1994), cert. den., 513 U.S. 966, 115 S.Ct. 432 (1994).

### Uncalled Witness

Weathington contends his trial attorney failed to contact Weathington's witness to prove he acted in self-defense, interview Weathington's witness, or call Weathington's witness at trial.

Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative. Graves v. Cockrell, 351 F.3d 143, 155 (5th Cir. 2003), amended in other part, 351 F.3d 156 (5th Cir. 2003), cert. den., 124 S.Ct. 2160 (U.S. 2004), citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978). Also, Boyd v. Estelle, 662 F.2d 388, 390 (5th Cir. 1981). Unless a petitioner provides the court with affidavits (or similar matter) from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice. Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001), citing Lockhart v. McCotter, 782 F.2d 1275, 1282 (5th Cir.1986),

cert. den., 479 U.S. 1030, 107 S.Ct. 873 (1987).

In the case at bar, Weathington contends he wrote to his attorney and informed him of the name of an eyewitness to the incident for which he was convicted and forwarded to him a letter from that witness. Weathington has not provided this court with the witness' name, an affidavit from that witness, or stated what the witness would have said had he been called to testify; Weathington has not even provided a copy of the letter from the witness that he allegedly forwarded to his attorney. Weathington only states the witness' testimony would have supported Weathington's claim of self-defense.

Since Weathington's claim as to an uncalled witness is unsupported by anything other than his own self-serving statement, Weathington has not shown that his counsel was ineffective for failing to investigate or call an unnamed witness.

Lack of Physical Evidence

Weathington also contends his trial attorney was ineffective for failing to present any physical evidence to support Weathington's claim of self-defense. Weathington contends he had received threatening letters from another inmate that he gave to his trial attorney. Those letters were not introduced into evidence and Weathington did not testify about those letters at his trial when he was explaining why he believed he would be attacked. Also, Weathington has not provided copies of those letters to this

court.   Again, since Weathington's claim is supported only by his

own statement, he has carried his burden of proving he his attorney

erred in failing to introduce letters at trial.

Therefore, Weathington has not proven he had ineffective

assistance of counsel.

### Protective Custody Status

Weathington also claims his trial attorney failed to show the

jury that he was in protective custody at the time of the incident

and argues that fact would have bolstered his self-defense claim.

However, Weathington's attorney elicited his testimony to show he

was in the SHU because he had requested protective custody and to

inform the jury as to all the circumstances leading to that

request.   Therefore, that evidence was presented to the jury

through Weathington's testimony and it was not disputed by the

government.  Since Weathington has not shown his attorney erred in

this respect, he has not shown he had ineffective assistance of

counsel.

### Altered Video Evidence

Next, Weathington contends his trial attorney failed to file

a motion concerning the fact that the video from USP-Pollock, which

was introduced into evidence, had been tampered with.  Weathington

contends the fact that the video does not show him stabbing Ater or

Ater stabbing him is proof it was tampered with.

Deborah Nugent, a special investigative services technician at

USP-Pollock, testified that all the cameras except one are stationary; the one exception is a pan-to-zoom camera (Doc. 48, Tr. pp. 120, 123). Nugent testified that, when officers announced a fight was taking place in the B-1 unit, she used the pan-to-zoom camera to locate the fight and follow it; obviously, Nugent missed the beginning of the fight with that camera (Doc. 48, Tr. pp. 123, 130). Nugent testified the other videos were from stationary cameras (Doc. 48, Tr. pp. 130-131).

Weathington has not adduced any evidence to support his claim that the videos were tampered with. Apparently, the cameras did not capture the beginning of the fight. Weathington complains that, since part of the fight is not on camera, he was unable to prove he was only defending himself in the fight, and did not initiate it. While that is unfortunate, it does not prove that anyone intentionally tampered with the videos and deleted that scene. Weathington has not alleged or shown, and there is nothing in the record to indicate, why anyone would have tampered with the videos to Weathington's detriment. Therefore, Weathington has not shown his trial attorney was ineffective in this respect.

Weathington also claims his appellate counsel was ineffective for failing to raise the issue of tampered video evidence on appeal. Since Weathington has not adduced any evidence to show the videos were actually tampered with, as discussed above, he has not shown his appellate counsel was ineffective in this respect,

either.

## Prosecutorial Misconduct

Weathington claims his trial and appellate counsels both erred in failing to alleged prosecutorial prejudice for indicting Weathington.   In a related claim, Weathington contends he was prosecuted in retaliation for his having filed a grievance concerning the incident.  However, Weathington has not alleged any facts to support his claims of prejudice and retaliation; no reason other than culpability has been shown to explain why the government prosecuted Weathington.   In any event, prosecutorial misbehavior alone does not constitute a wrong of constitutional dimension. Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940 (1982).  Therefore, Weathington has not shown his trial and appellate attorneys were ineffective in this respect.

## Opportunity to Speak

Finally, Weathington contends his trial attorney told him to wait until sentencing for an opportunity to speak, after he testified in his own behalf at trial.  Weathington does not allege what he would have said that he had not already testified about or shown how he was prejudiced by this.   Therefore, Weathington has not shown his attorney was ineffective in this regard.

## Appellate Issue as to Trial Counsel

Weathington further argues his appellate counsel erred in failing to raise the issue of ineffective assistance of trial

counsel on appeal.   However, claims of ineffective assistance of counsel are ordinarily brought for the first time on collateral review.   U.S. v. Gaudet, 81 F.3d 585, 589 n.5 (5th Cir. 1996), citing U.S. v. Pierce, 959 F.2d 1297, 1301 (5th Cir. 1992).   Also, U.S. v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995).   Therefore, Weathington's appellate counsel did not err in failing to raise that issue on direct appeal.   Instead, Weathington's ineffective assistance of counsel claims are properly before the court in this Section 2255 proceeding.

Double Jeopardy

Weathington contends his appellate counsel erred in failing to raise the issue of double jeopardy on appeal.   Weathington has not alleged or shown how he was subjected to double jeopardy.   It is noted that Weathington was convicted on only one count.   Therefore, Weathington has not shown he had ineffective assistance of appellate counsel in this respect, either.

This ground for relief is meritless.

Ground 2 - Altered Video Evidence

Weathington contends the video evidence introduced by the prosecution at trial had been tampered with because none of the videos showed Weathington stabbing at Ater or Liggins, and did not show Weathington holding a knife.

Weathington did not raise this issue on appeal, so he is procedurally barred from raising it for the first time in a Section

14

2255 proceeding without first showing cause and prejudice as set forth above.  Since Weathington failed to show he had ineffective assistance of appellate counsel, as discussed above, he has not satisfied the cause and prejudice requirement.  Therefore, this issue is procedurally barred.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Weathington's Section 2255 motion be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415**

15

(5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2255 proceedings for the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the _10th_ day of November, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE